All right we will hear argument in the last case on the calendar which is the Chippewa Cree Tribe of the Rocky Boy Reservation versus the Department of the Interior and Mr. St. Marks. We will hear argument in this order. Are you counsel for the tribe? Yes I am. Then you're going in the right place. We will hear after you we'll hear from counsel for Mr. St. Marks and then we'll hear from counsel for the government. Okay. Thank you your honor. Your honor may it please the court my name is Richard Zack and I represent the Chippewa Cree Tribe. I would like to reserve three minutes for rebuttal. This is a case where the Secretary of the Interior ordered the Chippewa Cree Tribe to pay about six hundred fifty thousand dollars without affording the tribe due process. The secretary did not comply with the American Reinvestment and Recovery Act section 1553 which deals with how it's supposed to deal with whistleblower complaints. There are certain statutory requirements there that the secretary did not comply with. What statutory requirements do you think were complied with? So what the way it's supposed to work on the sequence is a complaint is made an investigation is at the end of that the parties are supposed to be supplied with the report and then the employer which is the tribe gets an opportunity for rebuttal. And can you point to where you read it that way because I'm not sure I read the statute the same way. Let me I can your honor so the the sequence is and you're correct it's not set out specifically. It talks about rebuttal but I I think it could just mean that along the way you need to be told what the allegations against you are and have a chance to rebut them but that that could be before the report. I don't quite understand this argument about after the report or exactly the sequence you just laid out. Well the plain meaning of the word there's two answers to that your honor. The plain meaning of rebuttal is you know this is your position and we think you're wrong. But couldn't you just be rebutting the allegations people are making to the investigator rather than in rebutting the investigator? We don't know what those allegations are until we get the investigative report. What happened here is. Well I don't think that's true. I think the tribe knew that the there was an investigation into whether he was retaliated against. There was. In July of 2013 you're correct the tribe received a one-page letter saying an investigation has been opened into an alleged retaliation. That's all the tribe received in July of 2013. So that's the core allegation right? So at least you know the core allegation is that. Right and if you look at the business communications case which is the the case the circuit court case in the 8th Circuit that considered this precise issue. What it held was that a employer is entitled to be confronted with the evidence. And that's a direct quote from the opinion. And it gets an opportunity to cross-examine adverse witnesses. And again the plain meaning of the word rebuttal is we get to rebut. We get an opportunity to rebut the evidence. Well okay so even if that's right. Even if what you needed was the report and then opportunity to submit evidence. Didn't you submit evidence after you got the report? So when we got the report that was simultaneous with the December 2014 letter. And in that letter the department had already concluded that a reprisal had occurred. A prohibited arrest. That may be at least tentatively at that point. Or you can characterize it however you want. But you then did submit evidence. And it appears that the department then did consider that evidence and talked about it. So where is the problem of not having submitted evidence? So here's the problem and it's twofold. First the decision had already been made. And if you read that letter what the letter says is we will only take submissions on what relief is to be granted. At that point the decision's been made. Perhaps. But it sounds from the second report like they considered the evidence and thought about it again and analyzed that evidence. So yes they said the earlier thing. But it seems like they did something different than that. And if you read the letter, I think it's at page 5 of the letter, the letter says we will give your evidence no dispositive weight, is what they. Well, because they didn't believe any of it. But they considered it. I don't think you can read the letter that way, Judge. And, Judge, first of all, that sequence is inconsistent with the statute. And it's. Well, tell me where in the statute you get this sequence. So we get a right of rebuttal. And if you read the statute as a whole, the sequence is complaint first, as I said, then investigation. Can you point to me where? I think it's B1. It's the last clause of B1 is what you're complaining about, it seems to me. Yes. Which is that you're supposed to get the report of investigation simultaneously with its provision to the complainant and to the agency. That's correct, Judge. At that point, before the agency makes a decision, you can jump in and respond to the evidence that's in the report. Yes, correct. And at that point, and the reason why that makes sense, and the only reason why that reading is correct is because up until that point, we don't know what the evidence is, what the conclusion is going to be, how the investigation has been conducted. We don't know that. We don't know who he's, who the agents talked to, what documents he's reviewed, what information has been supplied by Mr. St. Marks. We don't know any of that. Yeah. Okay. So I mean, I think I. All we can do, I'm sorry, Judge, all we can do at that point, as of July 2013, is to tell the Secretary, these are the real reasons why he was removed from his position, which we did in August. We responded approximately, I think it's about a month after receiving that. And then, more than a year later, in December 2014, is when the report comes out, and the report says, we've made a decision Well, the report came out way earlier than that. You just didn't get it. That's, that's. The investigative report. Correct. Yeah, yeah. The report, I, I just, OIG, ROI, that's what I have in my head. Yes. Right. Okay. But let me ask you this. It's a slightly different question. You point to that Eighth Circuit case, I think it is. Yes. Business communications. Business communications, which did hold, at least in the circumstances there, say that you actually had to have more or less a formal administrative hearing in order for the process to comply with due process. And, and I guess that doesn't strike me as right at all for this reason. Your client, in agreeing to take this money, didn't it basically sign on to this set of, whatever the set of procedures are that are spelled out in the statute, didn't it basically just say, yeah, we're going to be willing to resolve disputes of this sort in line with this set of procedures, not the set of procedures that the due process might otherwise have entitled us to? And if, if so, why is that, why isn't that right? Judge, I don't think anybody has taken that position on the, on the other side here. And nor is that right. We are in, we're entitled to due process. And Well, you're entitled, let's say, to a jury trial to resolve a civil dispute over a certain amount. And you can voluntarily waive that and say, no, we'll just do it in this very constrained arbitration proceeding where there's no discovery and the like. That's your choice. You can do that. It seems to me the choice is put to you. Do you want this money? There are good reasons why the government has this very streamlined investigation and dispute resolution proceeding, right, that are unique to this program. And the disputes that are covered by it are only disputes arising out of your client's use of this particular money. So it's not like you're having to sign away your rights to due process and all other sorts of context. So why is it not okay for the accepting this money if certain disputes of this nature arise? These are the procedures that you and I are going to agree to resolve them. And you say, great, I'll sign right here. Give me that money. So we never, the tribe did not agree to waive its right to due process. What the tribe agreed to do was that certain whistleblowers would be, certain employees and employees only would be afforded protections. What business communication says, which I think is right, is that the due process clause still applies. I know that's what it says. And I'm saying, I don't think I agree with that case. And I'm just wanting you to respond to this. I can't remember what that contract said exactly, but it basically incorporated these statutory procedures into the contract. And I'm asking you, why is that any different from two parties agreeing to resolve a dispute by way of arbitration that strips away all sorts of procedural protections that you'd have if you went the judicial system route? Why is that any different from that? So for two reasons, Judge. First of all, as I said when I started the argument here, they didn't comply even with the provisions of the AERA. Yes, I'm with you on that. I'm saying, I'm talking about this hearing thing, because the statute says nothing about your getting an opportunity for a full blown evidentiary hearing where you get to cross-examine witnesses. So if that's what you're asking for, what I'm saying is that, yes, the Eighth Circuit decision seems to support that, but I don't think that's right. And I'm trying to get you to respond to, put aside the thing about you're not getting the report of investigation when you should have. I agree. If they violated the terms of the statute, maybe you get relief on that. But you want something beyond what the statute grants you. And I'm saying, why haven't you basically waived that right when you took the money? And here's why. We did not, and this is what, and I think business communications is persuasive in that we did not waive our right to due process. And this raises, and there's no explicit waiver of that in the contract. The contract says the Act will apply. And the Act doesn't say anything about a hearing. Well, business communications says that a hearing is required. It's part of the most basic tenets of due process is So it's a jury trial, but you can give that up, I guess. I'm just not. And I thought you were going to say that that would somehow be, you know, like the unconstitutional conditions doctor or something. I thought that's where you're going to go, but you're not going there. You're just saying that by signing the contract and agreeing to accept the money, you held on to all sorts of other rights that aren't spelled out in the statute. That's your position, I guess. So we did not waive all our rights as to due process, as to what we're entitled to under the Constitution, nor is the government or Mr. St. Mark's contending that. They're not saying that we waived all our rights to due process here. That's not their argument, either the government or Mr. St. Mark's. Is it your argument that whenever there's a dispute of fact in a matter before an administrative agency, the agency has to allow live witness testimony in order to resolve that dispute? No, Judge. So what makes this case among those that require a live hearing? So the reason why is because this is a unique procedure here that's been adopted under the ARRA, is there are – there's conflicting testimony between the testimony obtained by the agent and what the business committee members and other witnesses would have testified about had a hearing been held. And that's what – that's business communications comes in, is that there are factual disputes that the secretary resolved without appropriately hearing from the – So then the answer to my question is yes. Whenever there's factual disputes, he said, he said, or he said, she said, or she said, she said, there has to be a live hearing with witnesses. No, Judge. There could be circumstances where that could be resolved without live witnesses. This is a situation where the tribe – what's at stake here is, first of all, you know, potentially tens or hundreds of thousands of dollars of the tribe's money, of government money, as well as the tribe's sovereignty. The tribe's sovereignty – you know, the tribe is a slightly different entity than any other employer. And the situation is different here with respect to Mr. St. Marks because St. Marks is not an employee of the tribe. He is the chairman of the tribe. But these are your other arguments on the merits. I mean, getting back to the question of what about this fact dispute, I mean, maybe your argument is if there's a tribe involved in the agency, they get a fact – a hearing. I mean, is that what your response is? We would agree that due process is flexible and that it's moldable, depending on the situation here. But when you have a situation where the – where public money is at stake in the hundreds of thousands of dollars, that would require – that requires a level of due process that it wouldn't if, you know, there were – if it was a parking ticket or if there were $5,000 at stake. And that's what those cases say, is that due process must be applied in a way to address the property interests or the protected interests that are at issue. So I'm wondering about a different form of a waiver question. So your committee members were invited to be interviewed by the investigator, and you didn't let them get interviewed, or they declined to be interviewed on sovereign – on tribal immunity grounds. Why didn't that waive the fact dispute? I mean, they had an opportunity to tell their side of the story while the investigation was going on. Maybe then there would have been a fact dispute. Maybe the – maybe the agency would have had a hearing if there were a fact dispute. But you guys didn't offer the testimony from your side during the time when that was happening. That's not accurate. And I noticed I'm running short on time, and if I could answer that question and then just retain some time for rebuttal. That's not accurate. The record – if you read the record, the – in – shortly before the report was – Well, okay. There were other – there was another time where the tribe was accusing Mr. Marks, and there were a possibility of interviews then, and the interviews didn't happen. But earlier, at the beginning of the investigation, or earlier in the investigation, the committee members were invited to be interviewed, and a letter was written that said, we have tribal immunity, we're not coming. No. What the letter says is, here are the documents supporting the real reasons for his – his removal. Please contact us if you need additional information. He was – the members of the business committee were not contacted until much later. And what happened there was interviews were going to be scheduled, and the agent – the agent didn't follow up and never interviewed the – never interviewed the business committee members. But again, what business communication says and what's fundamental here is not that they get to be an agent and he gets to ask whatever questions he wants and it's – there's a limit to what the – what my clients can say. Okay. I want to – I know there were two – I'd like to get this straight, because it could matter. So in December 2014, I thought there were discussions about interviews that didn't happen, and you blame that on the government. But – That's correct. But let's talk about what happened in July 2013. Where is the thing where you said you would come to the request – come for the interviews that were requested at that point? So when the tribe submitted its documentation in August of 2013, if you read that letter – and it's in the record – it says, please contact us if you have – if you'd like further information. Now, there is a statement in there about we don't believe that the – that the investigation is appropriate because of our sovereign immunity, but the question – the letter says, please contact us if you'd like additional information. So was there never a request that the committee members get interviewed that was declined? That was my understanding, but I can ask the other counsel, and maybe they can point it to me. What I'm aware of is in December of 2014, the agent contacted business committee members, was referred to me, and we were in the process of scheduling those interviews and providing additional documents to the agents, and the agent never conducted the interviews. And you think there was never a discussion of interviews before that? I believe what the – what the letter says that was issued in August of 2013 was that here are documents. Let us know if you need any additional information. And I've noticed my time is up. But we'll give you some time for – Thank you. Good morning. May it please the Court. My name is Jeffrey Rasmussen. I am an attorney with Fredericks Peebles Morgan representing Ken St. Marks here. Normally I'm representing tribes here. I'm representing the tribe's chairman. And in this particular case, I want to – before I get to the main issues I want to talk about, I did want to briefly touch on the due process issue. That's not my primary issue. I believe that will be the United States' primary issue. I agree with them about half the time. I agree with them about half the time, kind of in the – or no, I don't agree with them on anything. Sorry. The United States agrees with them about half the time. But due process is the process that is due. I mean, that's where the phrase comes from. And the statute defines the process here that was due, and they were provided that process. And that's exactly what the Court's questions we're getting at, is that they did. They agreed to this. This was the process that was due to them, and they obtained it. The other thing regarding due process that I think is concerning is they haven't come up with anything that they would have submitted, other than the attorneys claiming to represent the tribe here today saying the tribe's – it was unreasonable for the agency to have found that the business committee members knew about Ken St. Mark's open letter to the tribal community. Everybody knew about Ken St. Mark's open letter to the tribal community. It was an open letter to the tribal community. They're saying, well, we should have had an opportunity to have the business committee members testify that they didn't know about that. It's like, no, you don't need a hearing for that. It was just incredible that anyone would even assert that they didn't know about the open letter to the community. So they haven't really shown anything that they would add to it. Numerous tribal officers were interviewed. The only ones who weren't interviewed were the ones who were represented by these attorneys here who didn't want their clients talking to the United States in a situation that was going to get them in trouble. They didn't talk – But where in the record – and now I'm confused because I thought that that was true, but now I actually am not sure. Is there somewhere in the record where they say in the 2013 summer that they won't be interviewed? The investigator in his report talks about trying to get an interview with tribal business committee members. And what happens is, as they said, the attorneys claiming to represent the tribe sent several letters, several long letters, where they go into their version of facts, not dependent upon what the business committee members know by personal information, based upon secondary information, based upon their trumped-up charges that they were bringing. And those are in the record at 725 and 745. Those are the letters from August of 2013 that Mr. Zak was referring to. So in those letters, they say, if you want anything more, contact us. That's what they're saying. And the investigator is saying, no, I couldn't get an interview with them. So that is concerning. That is the – that they didn't have anything else that they could offer. What they're asking for is a hearing, but they still have never explained to you why they need a hearing. And that's the concern here. They have – even if they have a right in some situations to a hearing, they still have to come up and show some reason for it. They can. They can waive their right to a trial, or we can have situations where we say, oh, there's no real dispute here. We can decide this without a hearing. We do that all the time in courts. And we do that all the time in administrative proceedings. And they haven't shown anything that they needed the hearing on. So that – that's my discussion of the due process issue. But like I say, the United States would – that's primarily their issue. The first issue I really want to talk about is no one is standing up to these attorneys. They do not represent the tribe. MS. GOTTLIEB How do you have standing to worry about that? You're not opposed to them for that purpose, are you? Aren't you appealing the lack of a better award from the government? MR. GOLDSMITH We have – there's not a case before you that they – that the tribe has filed. There's not. Because these people who are claiming to represent the tribe are not qualified to do it. They're being – MS. GOTTLIEB Aren't they – I mean, how are you opposed to them in this appeal before us right now? Like, why do you care whether they have the right lawyer or not? MR. GOLDSMITH Because what they're trying to do is appeal the determination that Mr. St. Mark's was a whistleblower. That's what they're trying to appeal. That was a decision in my client's favor. So, yes, we have the right to say to this Every time we bring this up in every other proceeding or in the briefs here, they say – we say, where's your resolution? They say we represent the tribe. MS. GOTTLIEB Okay. So even if – let's say you can make this argument. Is it a tribal law argument? How do we have jurisdiction to resolve this question in this court? Maybe you could sue them in tribal court and say you violated tribal law in having these lawyers. But what is the issue that we can resolve about this? MR. GOLDSMITH The issue that you can resolve is you are a court. They are coming into this court. They are filing a notice of appeal that they do not have the authority to file on behalf of the tribe. That is the issue. MR. RIEFFEL Presumably, if the tribe didn't think that Pepper Hamilton was representing it, the tribe would be waving its arms and say, hey, Pepper Hamilton isn't representing us. Do something about that. And that hasn't happened. MR. GOLDSMITH Right. And that's the problem here. What we have got is the whistleblowing, retaliation, claiming to represent the tribe. We have, for instance, in the record – MR. RIEFFEL But where is the other people from the tribe saying, hey, wait a minute? MR. GOLDSMITH That's what I am. I am Mr. St. Mark's attorney. He was the chairman of the tribe. That is what we are saying. So I am that person. MS. GOTTLIEB But why didn't you go – isn't this about – why didn't – it's about the tribal constitution – I'm sorry. Remind me if it's the tribal constitution where this idea is written that you need approval?  MS. GOTTLIEB Okay. MS. GOTTLIEB Well, no. I mean, it's the tribal constitution. So doesn't that have to be litigated in tribal court, interpreting the tribal constitution? MR. RIEFFEL Interpreting the tribal constitution would have to be – the final determination would come from the tribal court, yes. But where there is a clear violation such as this, if there was a tribal court decision from their highest court, you would say, yeah, we are bound by that. If that court said Pepper Hamilton is authorized to represent the tribe even though they have never gotten a resolution, they can't show federal approval even though it's constitutionally required, if the tribal court were to interpret its constitution that way, you'd say that makes no sense. It's there in black and white in the constitution, but we have to accept it. But we don't have that here. So it's up to you. They filed a notice of appeal. What they're doing is they continue to claim they represent the tribe. They represent the tribe, the tribe's interest, and they do not. And they continue to do this, and then they And that's – they're the bullies in this room. And you need to say to them, you don't get to do this. It says in the tribe's constitution you need federal approval. Where is your federal approval? You don't have it? You can't find files of claimant's rights. MS. MCGOWAN So why didn't you go to tribal court to seek an injunction to keep them from coming here today? I just don't understand how we can enforce the tribal constitution when there's a tribal court to do that. MR. RIEFFEL You can enforce the requirement that there was a federal law requirement or there's a requirement that they have federal approval. When they come into this court, as anyone else, any other attorney comes into this court, they need to show that they're authorized to represent. And they're not. They're simply not authorized to represent the tribe. You can see that in black and white. MS. MCGOWAN Well, the government has taken a different reading of that provision. And I don't see why we wouldn't defer to that. They say that we've interpreted it to mean when a request is put to us to approve it, we will act on that. But if nobody's requested it, we stay out of it. And that seems to me perfectly sensible. So why wouldn't we just defer to that reading of the  MR. RIEFFEL Well, first of all, because there's not a federal determination along those lines. There's not a federal policy along those lines. Second, what we have got here is an open defiance of the tribe's constitution. They will not submit a contract to the United States for approval. They do not have the approval. They shouldn't be here today. They should not be allowed to appeal here today. And that is a jurisdictional issue. If you don't have a notice of appeal from the tribe, you can't hear the tribe's issues. And you do not have a valid notice of appeal from the tribe. I want to now turn briefly and hopefully save a few minutes for rebuttal to the other issues that we have with the United States, which are the damage issues. MR. MCGOWAN Can you just address briefly the issue of whether Mr. St. Mark's was an employee? MR. RIEFFEL He was a he got a regular paycheck. He worked regular hours. MR. MCGOWAN Does the President get a regular paycheck of the United States? MR. RIEFFEL I don't know. I know he has a yearly salary. I don't know how he gets paid. MR. MCGOWAN Right. So just because somebody gets paid doesn't mean that that person's an employee, right? MR. RIEFFEL I would say MR. MCGOWAN Is the President of the United States an employee of the United States? MR. RIEFFEL In how employee is used in the whistleblower statute, which is designed to protect the people who are doing the whistleblowing, yes. I think if he were an employee, well, there's federal whistleblower protections for federal officers. So, yeah, it's a broad definition in order to catch everybody who is doing regular work and is getting they're in the position where they can provide the information to the United States. MR. MCGOWAN Is Jerry Brown an employee of the State of California? MR. RIEFFEL Under the federal whistleblower protection, under that definition, and we're talking about a specific definition within this act, yeah, he would be an employee. He is somebody who gets a paycheck, works regular hours, and has regular duties assigned that he has to do. MR. MCGOWAN I want to briefly turn now to the damages issue. Pepper Hamilton has asserted that Mr. St. Mark's salary should be what he had voluntarily agreed to take instead of the amount that he was authorized by the tribes. MR. MCGOWAN Who supervises Governor Brown's work for the State of California? MR. RIEFFEL Who supervises? Well, he's subject to checks and balances within the State of California by the courts and by the legislature. MR. MCGOWAN To whom does Governor Brown report in the State of California? MR. RIEFFEL To the people. Right. MR. MCGOWAN Is Governor Brown able to influence the workings of state government in California? MR. RIEFFEL Yes. MR. MCGOWAN Doesn't that mean under the five-part test in Clackamas that he's not an employee of the State of California? MR. RIEFFEL No. I'm not sure I'm understanding the court's question. No. MR. MCGOWAN Go ahead. MR. RIEFFEL Okay. The additional, in addition to the amounts that were awarded to Mr. St. Mark's, he had asked for additional attorney fees that were part of the retaliation. There are two ways you can get attorney fees in a case. One is that you can get your attorney fees as costs, so your attorney fees for doing the whistleblower. And the other one is as damages. Attorney fees are often damages in a case because one of the common things is that people retaliate by using litigation to get at the person who's doing the whistleblowing, which was exactly what was going on here. They were making up charges against Mr. St. Mark's and then litigating those charges. And Mr. St. Mark's had a substantial cost in attorney fees to defend those. MR. MCGOWAN Was the attorney's fees incurred in those other two actions as damages or rather as under the attorney's fees provision in this, I don't know if it's in this statute, but in this proceeding? Do you know what I mean? Because I read, I seem to remember that the fees in those other cases were denied on the ground that they didn't have, I don't know, a sufficient connection to this proceeding or something to that effect? MR. RIEFFEL That's my understanding, right. MR. MCGOWAN That's why I'm asking. I didn't understand why anyone would try to ask for them as fees in this proceeding as opposed to damages, but I assume that your client just didn't request them as damages, and that's why there was no analysis along those lines. Am I wrong about that? MR. RIEFFEL Yes, I think you are. We were saying that those were the part and parcel of the retaliation in this case. It was a big part of the record, especially at the latter part, was that those were a big part of what we were having to do because of the retaliation. Those cases were the retaliation themselves, and the attorney fees in those were the retaliation, and so that they should have been awarded. And finally, the issues regarding interest, the United States did not make a decision regarding free judgment interest, and then we have tried to get some protection while this case was pending and have not been able to get it. The agency provided a stay to the other side and said, we'll deal with how we'll protect Mr. St. Marks in the interim by bond or otherwise, and never did that. MS. GOTTLIEB So I understand the bond argument, and it seems like if you had gotten bond and there was interest accruing, it would be equivalent to this post-judgment interest. But I don't think you appealed the denial of bond, a bond with escrow. It seems like you didn't separately appeal that when that decision was made. So now we have this post-judgment interest equivalent. Do you have anything in the statute or otherwise that says post-judgment interest is available? MR. GOTTLIEB No. The key error there is that the agency never decided the motion on bond. It never decided it. It's still pending. We filed it right away, as soon as they filed their case. We asked for something to protect him during it, and they said, we're going to grant the stay. We'll decide bond later. We actually sent a follow-up letter about six months later. We discussed that in our reply brief, and we still haven't gotten a response. So that's why it is the equivalent. We've done what we could. The only other thing we could have done is maybe a  MS. GOTTLIEB Maybe you could come to us for a mandamus, asking us to order them to put it in escrow or something? I mean, it does seem like that's a lot. MR. GOTTLIEB Well, we couldn't have done that. We could have, I think, probably come to you for a mandamus to ask them to decide the issue, because they hadn't decided it. That was the problem. And at what point we could have done that. Thank you. MR. GOTTLIEB Let's hear from the government. MS. LILLY Good morning, Your Honors. Janie Lilly for the Department of the Interior. Your Honor, the agency correctly determined that the tribe removed Mr. St. Mark's as in retaliation for his whistleblowing activities, that those were appropriate remedies. In answer, Your Honor, to your question about hypothetical applications of the statute to other types of officials and other governments, those are really of no moment, because what the agency determined here was that under the statutory definition of ARRA, that Mr. St. Mark's performed services on behalf of the tribe and received a salary, but even under the clackamous factors that the Supreme Court looked to in a different statute in a different context, the court has said that the real dispositive consideration is control. And here there is evidence in the record that the tribe or the business committee could supervise Mr. St. Mark's performance of his duties as chairman, that it could remove Mr. St. Mark's and did so, exercised that authority several times, in fact. And so it was appropriate for the agency to determine that he was an employee and that the whistleblower protections extended to St. Mark's. So is Jerry Brown an employee of the state of California under ARRA's definition of employee? Well, Your Honor, I think as the Supreme Court has instructed in a similar statute, the dispositive consideration would be control. And here Mr. St. Mark's... I'm not asking you about St. Mark's, I'm asking you about Brown. Well, I know about Mr. St. Mark's and I know less about Governor Brown, but it stands to reason that the type of control exerted by the business committee over St. Mark's is different from any control asserted over a state executive with presumably plenary executive authority. Here Mr. St. Mark's... Let's talk about removal. Could Governor Brown be removed by the California legislature under some sort of an impeachment process? I assume so, notwithstanding my lack of California state constitutional knowledge. Whatever lack you have, I have it in spades because I'm from California. We're starting from the same knowledge base. So apparently St. Mark's was removed by some sort of, it seems like an impeachment process. How is that different from what would happen to a governor of any state? That may or may not be similar, but the Supreme Court has instructed, again under similar language, to look at the totality of the factors. And it wouldn't necessarily be the ability to remove an employee that stands to reason that it would be about the exercise of control over how he conducted his duties. According to the tribal constitution, the record that Mr. St. Mark's exercised authority delegated by the business committee, he was supervised carefully by the business committee in this case, and he could only vote in cases of a tie. So he doesn't exercise the type of control that we might posit an executive of the state would, according to the hypothetical. And so for that reason, it was appropriate for the agency determined that the whistleblower protections extended to Mr. St. Mark's in these circumstances. What was his, I mean, he was chair of the business committee. Yes, Your Honor. Was that the functional equivalent of being the chief executive or, like, what's the analog? You know, I'm not sure that I can analogize because those are matters of tribal law. But what we know is that he could only exercise or that he could exercise delegated authority from the business committee and that they supervised, you know, to the tune of these charges or about the, you know, the level of authority that he could or did exercise when they levied those charges against him in support of their removal of him. So Your Honor, I just don't know that there is a perfect analogy. Isn't that the same for a state? A governor can, at least in some states, I imagine, exercise only the authority that's been approved by the state legislature. It may be, or the executive of the state may exercise independent authority from the legislature. And so, as the Supreme Court has instructed, it'll be a case-by-case analysis of how this particular statute applies. Congress, when it adopted the wide-ranging stimulus funds and pushed those out to the economy to stimulate the economy, adopted some protections for whistleblowers and ways of protecting those funds. Adopting a broad definition of employee. Could I ask you about your understanding of the procedural order that this investigation and report was supposed to take? Because I'm not sure where this rebuttal language sort of fits in or whether the statute has an order. So I'd like you to give me your understanding. Of the statute? Yeah. What do you think ARA requires procedurally? ARA requires, in the first instance, when there's a complaint delivered to the appropriate inspector general, the inspector general of the appropriate agency, for the agency, the OIG, to conduct an investigation in the first instance and determine whether the complaint is frivolous. It then requires the agency to conduct an investigation and, at the  employer. And then it also requires, in the course of the agency's adjudication of whether there has been a prohibited reprisal, an opportunity for the employer to provide by clear and convincing evidence that it would have taken this action in the absence of the protected activity. So it sounds like you do agree, then, that the order is that the investigator's report has to come out and then the rebuttal opportunity exists. I'm not sure I'm taking a firm position on where that is. Wait. Just focus on the last clause of B1. I thought that the statute made quite clear that the OIG's ROI, the report of investigation, upon completion of such investigation, the OIG shall submit a report of the findings of the investigation to the person, the person's employer, which here would be the tribe, the head of the appropriate agency, which here would be, what, the Department of Interior? Exactly. And the board. So I guess that's, it seemed to me that was a potentially fatal procedural defect in the proceeding, in the process that was followed here, because the tribe did not get the report of investigation until the Secretary had already made up his or, oh, no, the solicitor of the. The solicitor interior, the designate in this case. Well, Your Honor, I would resist the notion that the agency had made up its mind at the time that it provided reasoning and analysis for the determination. The order where the agency made a final determination and ordered relief was much later. And so the agency shouldn't be faulted for providing. No. But December 2014, that's a letter, isn't it? Yes. I don't remember what form it took. We've termed it a determination. And it expresses a view as to the outcome of the proceeding. Yes, Your Honor. That's the same date that the tribe got the report of investigation. There wasn't any prior opportunity for them to respond to what was in the report. Well, to the contrary, Your Honor, while the tribe may not have received the report of investigation, the tribe participated in that investigation on several. The statute gave them the right to receive the report at the same time as the agency got it, and they didn't get that right here. Well, Your Honor, they then received the opportunity and submitted a 40-page submission to the agency. After the solicitor had already made up her mind. Well, after the agency had given some indication of its analysis of the investigation. But I don't think the agency should be faulted for that. When did that happen? In December 2014. Yeah, that's what I'm saying. We're not communicating. I'm saying that, as I understand it, the report of investigation actually was finished back in May. Right? Yes, Your Honor. And it was given to the Department of the Interior then. Yes, Your Honor. Okay. The statute says that they were supposed to get the report at that same time. So then what? So they did, Your Honor. They got the report in May? They say they got it in December. December. They got it. So the statute was not complied with because they did not get the report of investigation at the same time as the agency did. By the time they got the report, the agency had already made up its mind as to the appropriate outcome. And so then they were in a position of having to basically get the agency to reconsider. It seems to me that's different from the process that the statute lays out. I don't think that that is precluded by the statute for the agency to issue some sort of initial determination for how it's viewing the evidence, Your Honor. And the agency shouldn't be faulted. In December of 2014, the agency says, here's how we've decided this. Now let's talk about remedy. That's exactly what that December 2014 thing says. And then, Your Honor, the agency, if that were true, then the agency either cured any sort of violation by accepting the luminous submissions. That's an analogy as to why I don't think that's a fair characterization. I mean, it's a different context. But in a sentencing proceeding in federal court, in a criminal case, pre-sentence report is prepared by the probation office. And let's say it's given to the judge, not to the defendant. The judge comes out on the bench and says, sir, ma'am, whoever the defendant is, I've reviewed the pre-sentence report, and here's the sentence I'm prepared to pronounce. Now here's the pre-sentence report. I'll hear from you. At that point, you're in the position of having to talk someone out of a decision they've already made. And I don't think that's the ‑‑ that complies with the ‑‑ Your Honor, in the context of ARA that uses ‑‑ that contemplates a streamlined procedure, I don't think the agency can be faulted for giving more notice to the employer here of how it's viewing the investigation in the same way that the notice given of a tentative ruling and then allowing the parties to discuss that. That ruling deprives the parties of some sort of constitutional notice or opportunity to be heard. I'm saying it's a statutory right that they had to review the evidence that the report of investigation was relying on. Yes, Your Honor, which they did. And that the agency was ‑‑ no, no, they didn't. Not before the agency made up its mind, even on a tentative basis. Your Honor, I ‑‑ That's what the statute ‑‑ I'm just saying, that's what the statute contemplates in terms of the order, and that did not happen here by your own admission. Your Honor, I think we're in agreement on what happened here, but the import of that is, I think, where we are disagreeing. The agency provided the report as it's required to under the statute and gave opportunity to be heard prior ‑‑ It didn't at the time it was required to under the statute. Are you not reading the statute the same way I am? I think we're not, Your Honor. I don't think the statute precludes. Look at B1 and tell me how that language allows the agency to get their report six or seven, hold it for six or seven months, and then give it to the person's employer. How does that language work? Your Honor, I think the question of the six or seven months may be as a result of the Privacy Act protections associated with the report of investigation. I gather what you are most concerned about is the initial determination of reprisal being delivered simultaneously with the report of investigation. Your Honor, I don't think that that is precluded by the statute. It does sound like, I would actually not focus on this phrase, but it does sound like that. It says, upon the completion of such investigation, this inspector general shall submit a report of the findings of the investigation to the person, the person's employer, the head of the appropriate agency, and the board. So it does sound like upon the completion of the investigation, the inspector general is supposed to give the report to all those people, but you're admitting that didn't happen all at the same time, right? I'm admitting that the report of investigation was given in a timely fashion to the employer and the whistleblower in this case, Your Honor. But there's nothing here. Do you know that the heads of appropriate agency and the board include your client? I mean, the agency that made the decision? It sounds like it's supposed to go at the same time to all of them. Your Honor. Which it's probably the board. Is that the reference to the agency that made the decision in the sentence? The head of the appropriate agency would be my client, the Department of Interior, Your Honor. But there is nothing in this language that precludes the agency from doing what it did here, Your Honor. And in any event, it did not deprive the tribe of due process. The tribe participated in the agency's investigation, submitted materials to the OIG repeatedly, and then later submitted lengthy legal and factual arguments before the head of the agency. Those were addressed point by point in the agency's final determination. The tribe was heard out and has not pointed to anything that suggests that it was deprived of constitutional due process. I point to Your Honor that there is no sense in which the tribe has suggested that any sort of statutory violation, if there were one, has harmed it in any way. See? So you're really making it harmless. I mean, so this seems like you're supposed to submit it to your client, which is the head of the appropriate agency in the statute, and the employer and the person, all upon the completion of the Inspector General's investigation. That didn't happen, but you're arguing that it's harmless because the agency considered the rebuttal evidence later. I'm not sure that that reading of the statute is necessarily required, Your Honor. I don't think the tribe has necessarily raised any sort of statutory violation in the questions presented, Your Honor, and I think those are my two answers. But it certainly hasn't explained, especially in light of its 40-page submission, voluminous exhibits before the agency after it received notice of the investigation and the agency's thoughts on that investigation that it was deprived of due process. Okay. Thank you. Thank you, Your Honor. We'll hear first from you in rebuttal. I'm sorry. I do have one question. Yes. Do you have any evidence that they, in the summer of 2013, refused to attend interviews? Your Honor, I point you to two parts of the record. At ER 14, the first page of the report of investigation, the final paragraph said when we requested interviews from the business committee regarding these events, its legal representative provided us with the committee's list of what they considered more specific charges against St. Mark's. That is not an express refusal to cooperate, but certainly they never did. And then later, the agency mentioned in its final order on page 108-4. Just before you move on to that second thing, so that paragraph there, isn't that just a reference to the August 2013 letter that the tribe submitted in response that attached all those exhibits? It may be. Your Honor, there is evidence in the record that there was telephonic communication between the tribe and the IG, but I would refer you to some other. The reference you pointed us to is that it says its legal representative, the tribe's legal representative, provided us with the committee's list of what they considered more specific charges. Is there some other submission, some other list besides the August 2013 thing that I'm thinking of? Your Honor, the tribe submitted multiple things to the OIG on August 11th. On August 25th, they submit a supplemental letter. There's discussion in the record of an August 26th intervening phone conversation with OIG. There were affidavits submitted on November 3rd, 2013. So there's an ongoing discussion between the tribe and OIG. But I point you to page ER-1094. This was attached to the final order of the agency in which the agency is, or I guess the U.S. Attorney's Office is responding to the tribe's request for more investigation into St. Mark's, which we've noted is sort of a separate matter. But here it says, when the agent assigned to the whistleblower case attempted to interview tribal officials about the allegations, they all refused to be interviewed. If that has changed, please give me the names of the tribal officials who will agree to an interview, and I'll facilitate those meetings. So that, I believe, to be referring back to earlier requests for interviews of the tribal business committee in connection with the whistleblower case. Okay. So pointing to that as evidence that they refused the interviews, do you think there was any kind of waiver of an opportunity to submit evidence earlier because of that, or are you not relying on that kind of argument? A waiver of an opportunity to be interviewed, Your Honor? Well, or just, I mean, so we're trying to figure out, like, did they have an opportunity to present their side of the story? Was there due process in letting them tell their side of the story? Right. It's kind of at various stages. So are you relying on the interview stage as one of their opportunities, and does it have any effect on the other questions about their opportunities or not? So I hope that I'm answering your question. We have made arguments and believe that the tribe was heard out throughout both stages of the investigation, both before the OIG in the course of the interviews, and I noted the multiple submissions and evidence of correspondence with the OIG, and then in its submissions before the agency in that latter stage. But, like, say they had been interviewed, and they had told totally different stories than the investigator was hearing from other people. Was there a possibility of a hearing if that had been the case? I mean, would anything different have happened if they had been interviewed? The tribe hasn't suggested anything, and here, unlike in BCI, the tribe had submitted, you know, there was a written record of its reasons for removing Mr. St. Mark's, and the agency investigated those reasons. The tribe submitted evidence in an attempt to authenticate those. The agency, and by the agency here I mean OIG, in its report noted the lack of evidence authenticating many of those or the contradictory evidence on many of those bases. So we don't see any need for a hearing, and certainly the tribe hasn't pointed to anything that would suggest a hearing, even if BCI were correctly decided along those lines. There's simply no credibility determinations of the type that BCI was discussing at issue here. What about the sexual harassment allegations? I mean, aren't those credibility-based? Who's right about whether he sexually harassed the women who accused him? I know you have reasons to think those women aren't trustworthy, but isn't that a credibility determination? Well, there, Your Honor, the—and I don't think that those were the— certainly no suggestion has been made that the business committee members would provide any insight into those allegations, but there the OIG investigated those and determined that those were not credible. Not only were the substance of the— the tribe's own handling of those allegations created the inference of pretext, that there was no contemporaneous documentation or that the tribe had taken those types of allegations seriously, Your Honor. If there are no further questions, then I will sit down this time. Thank you very much. We'll give you three minutes for rebuttal. If you could put three minutes on the clock, please. Thank you, Judge. Judge Friedland, just to answer your question and to put this to rest about whether they refused interviews, the document that counsel for the Department of Interior points to is a letter from the United States attorney who is not involved in this case at all, saying his understanding is that there was a refusal. If you—so he has nothing to do with the case. He's not participating in the case. The letter has nothing to do with the whistleblower investigation. And if you read our letter to the Department of Interior, to the IG, it's here's some documents. We're waiting for you to call us. Call us if you have more information. So to point to that as the only record evidence that there was a refusal is just—it's incorrect. The U.S. attorney is not involved in the investigation. Now, to address the employee—I'm sorry. Let me go to the December 24th—the December 2014 letter. The December 2014 letter is a decision. And what it says is it's not a tentative notice of what's occurred here and what the agency's views are. There's no reasonable reading of that letter that supports that characterization. The heading on page 5 is findings of fact. And the letter goes through 16 findings of fact. Section 3 is CCT engaged in a prohibited reprisal. The department has already made its decision. And then if you go to page 11, which is at ER 13, the letter says, the only thing we're going to take from you at this point, and I'll read it accordingly, no later than January 12, 2015, Mr. Blatt, St. Mark's, shall detail the relief if any that he seeks consistent with the terms of the ARRA. We will also consider any submission of the CCT within 15 days of that. So that's what the decision was made at that point. And the only information that was requested was tell us about Mr. St. Mark's position on relief and the tribe's position on relief. It is a complete misreading of the record to say that that was some sort of tentative notice. But didn't the tribe, in response to that December 2014 letter, go on and submit materials pertaining to liability? We did, because at that point, that's the first time we'd seen the report. That's the first time we'd seen it. Right. And the decision about the reprisal had already been made. And as Judge Watford said, now we have to try to talk them out of it, after they've made findings of fact, not a preliminary conclusion. Well, but I haven't even read your brief to contest. So they did evaluate the evidence at that point. You may say they still had their mind made up or whatever, but they did say stuff about it. And I don't really read your brief to argue that what they said about it is wrong. So I'm not quite sure, like, what else you would have submitted or what would have happened differently. Judge, we do say it's wrong. And at a hearing, we submitted – Well, you say you should have had a hearing, but you – I mean – So you are exactly right in that there are credibility determinations that have to be made. About sexual – the sexual harassment allegations, that's just one of several allegations that are entirely based on credibility. And the reasons why those were dismissed was because the complainant in that case against Mr. St. Marks had a conviction or was – or would have had some conviction later at some point. She had been charged with a crime. And they dismissed that on that ground alone. But the crime was the thing he blew the whistle about, as I understand it. No, it was not. It was not. That was a – that's a different business committee member. Chance Houle is who he blew the whistle about. I thought one of the sexual harassment – But then, Judge, even if it was, it's still a matter of credibility. That person can still be credible if she – you know, that's what has to be hashed out at a hearing. And if I could just spend just a couple of seconds on the employee issue, if you look at the Clackamas factors, the Clackamas factors are very clear. Mr. St. Marks, he cannot be hired and fired by the business committee or the tribe. He can be removed after a due process hearing, and he has access to the tribal courts in order to address any shortcomings in that proceeding. So there is no hiring and firing of Mr. St. Marks. He's not an employee. So how – he was selected through an election? Correct. By the entire tribal membership? The voting – the eligible voting members of the tribe. Correct. So he was elected. He was constitutionally removed. He cannot be fired. No one can go up to him and say, you're fired. There has to be a vote of the business committee following the procedures set forth in the tribal constitution. So doesn't that weigh against finding that he's an employee subject to the protections of ARRA? That's what I'm saying. He is not subject to the protections. And it's as if – if you read that an employee provides services for – to an employer, that's the same circular definition that the ADA has and the ADEA has. The Supreme Court calls them circular, those types of definitions, and says when you have that, you have to apply the Clackamas test. And it's a – and this is an antiquated term, but it's not my term. It's the Supreme Court's term. If it's a master-servant relationship. That's the only time you have an employee. Okay. The other factors are – You've exceeded your time. I'm going to have to cut this off. All right. Fascinating issues. We could spend literally the whole afternoon talking about them. Thank you. Thank you, Justice. You still need to hear from Mr. Rasmussen. We'll give you three minutes as well. Thank you. I just wanted to briefly touch on the analogy to the governor of California. The tribe's constitution, Mr. St. Mark's is a member of the business committee. And as a member of the business committee, he is the chairman of the business committee because he runs for that particular office. Some tribes do choose their business committee chairman in a different way. But he is a member of the business committee. The business committee then has various duties that its members perform. The definition in the ARRA is simply that casts a broad net. The term employee, except as provided in paragraph B, which is federal employees, means an individual performing services on behalf of an employer. And he was certainly doing that. That was his regular job. Was the business committee the governing body of the tribe? Yes. Was there any other governing body of the tribe other than the business committee? There's the people, the voters. So when the business committee would remove Mr. St. Mark's, the voters voted him back in. They removed him again. The voters voted him back in. They removed him again. The voters voted him back in. So the voters were putting him back into office. They were ultimately the ones that made it so that he was able to remain in office. So in that, as far as being an employee, he was certainly performing services on behalf of the employer. That was what he did in a number of different ways. The other issue I wanted to get to was the credibility questions. Certainly a sexual harassment claim is a credibility issue. But, again, I haven't read anything that the tribe has submitted where they have said, here's some evidence that we weren't able to provide to you that we would like to provide to you regarding this. This person who made these allegations, she was prosecuted and was sent to prison because of Mr. St. Mark's actions. He did whistleblow on her. And a couple days after she found out that, she made up these allegations. That's what the inspector general said. Her story was changing, the timing, all those sorts of things. Yes, it's still a credibility issue, but this is not something where we're on a summary judgment standard. And then when they submitted their long discussion afterwards, they didn't submit anything new on that particular issue. They said instead that it was incredible that they said, you know, we should have been able to provide evidence which the business committee members would have direct evidence of regarding such things as whether they knew about the public letter to Mr. St. Mark's that was sent to the community, those sorts of things. They didn't provide anything that they didn't say they needed to provide as evidence. Thank you, counsel. Thank you. We appreciate the very helpful arguments in this case. The case just argued will be submitted.
judges: Watford, Friedland, Feinerman